IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Travis Orange, #311216, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No.:0:06-2601-PMD-BM |
| ) | |
| ) | |
| Audrey Fielding, Sergeant; Antron Lewis, ) | |
| Officer; Willie Winns, Officer; Lane Cribb, ) | **ORDER** |
| Sheriff of Georgetown County; and Michael) | |
| Schwartz, Jail Administrative Director ) | |
| of the Georgetown County Detention Center,) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the court upon the Magistrate Judge's recommendation that Defendant Lane Cribb's ("Cribb") Motion for Summary Judgment be granted and Defendant Michael Schwartz's ("Schwartz") Motion for Summary Judgment be denied. The Record contains a Report and Recommendation ("R&R") of a United States Magistrate Judge which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A dissatisfied party may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Plaintiff Travis Orange ("Plaintiff" or "Orange"), Schwartz, and Defendant Audrey Fielding ("Fielding") filed timely objections to the R&R.[1]

---

[1] The Motion for Summary Judgment at issue in this Order was filed by Defendants Schwartz and Cribb on January 9, 2007. Upon the Magistrate Judge's recommendation that Defendant Cribb's Motion for Summary Judgment be granted and Defendant Schwartz's Motion for Summary Judgment be denied, Fielding filed objections. Fielding's objections simply dispute the Plaintiff's recitation of the events of January 4, 2005, and in any event, Defendant Fielding's potential liability is not at issue in this Order. The court therefore does not consider Fielding's objections in evaluating Defendant Schwartz's and Defendant Cribb's Motion for Summary Judgment.

1

## BACKGROUND

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging his constitutional rights were violated while he was a pretrial detainee at the Georgetown County Detention Center (the "Detention Center") in Georgetown, South Carolina. In his verified amended complaint, Plaintiff alleges that on January 4, 2005, he was assaulted by Defendants Fielding, Antron Lewis ("Lewis"), and Willie Winns ("Winns"), all officers at the Detention Center. He alleges he requested to speak with Fielding after he was told he would be placed in "Lock-Up for giving an [i]nmate of Georgetown Detention Center some canteen under the door." (Am. Compl. at 5.) Plaintiff alleges that after he requested to speak with Fielding, he was threatened by Officer Winns and Officer Lewis, "who immediately beg[a]n to beat me to the state of unconsciousness, along with being helped by Sgt. Fielding to beat me." (Am. Compl. at 5.) Specifically, he alleges Winns used mace on Plaintiff and choked him, and Lewis kicked Plaintiff in the face while Lewis was wearing steel-toe working boots. (*See* Am. Compl. at 6-7.)[2] According to Plaintiff, Fielding "stood by and watched those in and under her supervision use excessive force" on Plaintiff. (Am. Compl. at 7.) He further alleges that as a result of the beating, he had to be transported to Williamsburg Regional Hospital and that he now suffers from chronic physical damages, including blackout spells and injuries to his back, neck, and face. (Am. Compl. at 5.) Although unclear from Plaintiff's amended complaint exactly when, Plaintiff alleges that after he was beaten, he experienced "further act[s] of abuse and cruel and unusual punishment, by being subjected to being strip[p]ed naked of clothing

---

[2]It appears Plaintiff was originally housed in the Williamsburg County Detention Center but was transferred to Georgetown County Detention Center because Plaintiff received threats from his co-defendants while he was housed in Williamsburg. Plaintiff seems to assert that Defendant Lewis' assault was motivated by the fact that Lewis was related to Plaintiff's co-defendant. Plaintiff apparently testified against Lewis' cousin.

2

and food for three days following the [c]omission of the Officers['] deliberate indifference to my well[-being] and safety." (Am. Compl. at 9-10.)

Plaintiff asserts that Captain Barry Marshall of the Division of Internal Affairs at the Detention Center conducted an investigation into the incident occurring on January 4, which resulted in Fielding, Winns, and Lewis being terminated from their jobs. (*See* Am. Compl. at 5-6.) Furthermore, Plaintiff alleges that criminal charges were brought against the officers as a result of the incident and that Lewis pled guilty to these charges.[3] Defendant Lewis allegedly admitted "to S.L.E.D. Investigator Rodney Thompson that he kicked [Plaintiff] in the face on the date of January 4, 2005." (Am. Compl. at 8.) The Amended Complaint further states, "The Plaintiff asserts that he has been subjected to the deliberate indifference of the defendants of this action, by their own omission of deviating from the standards of professional ethics, and the Georgetown Detention Center, policies, rules, and regulations . . ." (Am. Compl. at 10.)

Plaintiff states he is suing Defendant Schwartz in his individual and official capacity; Plaintiff asserts Schwartz is liable for Plaintiff's injuries because Schwartz is the administrator of the Detention Center and therefore has "the authority to train his Employees/Officers to set better standards before the public eye." (Am. Compl. at 12.) Plaintiff asserts the officers were "able to subject [him] to such cruel and unusual punishment, while being under the authority and supervision of its administrator[, Schwartz,] who[] fail[ed] to train, discipline, and demand strict compliance with the rules, policies, and regulations, set forth to operate such a facility, that has intentionally, violated my 8th and 14th Constitutional Amendment Right." (Am. Compl. at 12.) As Magistrate

---

[3]Based on Plaintiff's allegations, it is unclear whether criminal charges were brought against all three officers or only Defendant Lewis. However, it appears likely that criminal charges were brought only against Defendant Lewis.

Judge Marchant notes in the R&R, the narrative of Plaintiff's Amended Complaint does not mention Defendant Cribb.

On January 9, 2007, Schwartz and Cribb filed a Motion for Summary Judgment. Schwartz and Cribb "take the position that all allegations against them are made in their official capacities as the administrators of the Detention Center." (Mem. in Supp. at 1.) They both state that they did not have any personal involvement with the Plaintiff while he was housed at the Detention Center. (*See* Schwartz Aff. ¶ 5; Cribb Aff. ¶ 4.) Both Cribb and Schwartz assert they are entitled to Eleventh Amendment immunity and qualified immunity. (Mot. for Summ. J. at 5.)

In an R&R dated April 20, 2007, Magistrate Judge Marchant recommended granting Defendant Cribb's Motion for Summary Judgment because (1) Plaintiff did not mention Cribb in the text of his Amended Complaint, (2) Plaintiff did not present any evidence that Cribb had any knowledge of Plaintiff's situation at the jail, and (3) Plaintiff presented no evidence that Cribb played any role in the assault. (*See* R&R at 7.) The Magistrate Judge stated, "[I]t is readily apparent from a plain reading of the allegations of Plaintiff's Complaint as well as the other filings in this case that the only reason Cribb has been named as a party Defendant is because he is the Sheriff of Georgetown County." (R&R at 8.) While the Magistrate Judge noted Cribb "may be held liable for the conduct of the other Defendants if that conduct was the result of an official policy or custom for which Cribb was responsible, Plaintiff presented no evidence regarding the existence of any official policy or custom put in place" by Cribb which led to the assault. (R&R at 9.) The R&R notes that Plaintiff "specifically asserts in his Complaint . . . that the conduct alleged was in *violation* of the Detention Center's policies." (R&R at 9.)

The Magistrate Judge recommended denying Schwartz's Motion for Summary Judgment.

The Magistrate Judge noted that an affidavit filed by Plaintiff on April 6, 2007 contained some specific allegations against Defendant Schwartz. In this affidavit, Plaintiff states that once he discovered Defendant Lewis was related to one of Plaintiff's co-defendants, Plaintiff immediately contacted one of his attorneys to "inform[] him on the danger that [Plaintiff] was in." (Pl.'s Aff. ¶ 11.) He describes how his attorneys attempted to get him transferred to another facility and further states (verbatim),

> 22.   I spoke with Jail Administrative Director Michael Schwartz and Captain Barry Marshall several times along with Lt. Wineglass and Lt. Barenose about my transferred.
> 23.   I told them about the danger that I was in. But failed to take action. By following their Policy(s).

(Pl.'s Aff. ¶ 22-23.) The Magistrate Judge noted that based on these assertions, "for purposes of summary judgment there is a genuine issue of fact as to whether Schwartz was at least aware of Plaintiff's claim that he was in danger and needed to be transferred out of the Georgetown County Detention Center, but took no action." (R&R at 10.) The Magistrate Judge further found summary judgment was not appropriate with respect to Schwartz pursuant to the doctrine of qualified immunity because "it was certainly clearly established at the time of the filing of Plaintiff's Complaint that an inmate's constitutional rights could be violated if government officials know of a danger to an inmate and fail to take any corrective action." (R&R at 11.)

## STANDARD OF REVIEW

### A.    Magistrate Judge's R&R

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of

5

the entire record and the R&R, as well as objections filed by Plaintiff and Defendant Schwartz, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

**B.     Summary Judgment**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327.

## ANALYSIS

**A.     Plaintiff's Objections**[4]

Plaintiff's first substantive objection is to the Magistrate Judge's determination that Defendant Cribb is entitled to summary judgment. Plaintiff acknowledges he "must show that Cribb played some role in the alleged violation of [Plaintiff's] Constitutional Rights," but Plaintiff maintains "that he has sufficiently outlined the requirements of a claim under § 1983." (Pl.'s Objections at 3-4.)

A warden or prison official may be liable for his subordinates' constitutional violations if the official "tacitly authorized" or was "indifferent to the . . . constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). However, as the Magistrate Judge noted in the R&R, in order to maintain a claim under § 1983, a plaintiff must show, in part, that a named Defendant deprived him or her of a federal right. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see also Harris v. City of Va. Beach*, 11 Fed. App'x 212, 215 (4th Cir. 2001) (affirming the district court's dismissal of the plaintiff's claim against five defendants when the plaintiff did not allege any of these defendants were personally involved in the

---

[4] Plaintiff's first objection is to the Magistrate Judge's statement that Plaintiff did not provide any affidavits or deposition testimony from either of his attorneys to "verify" the statement in Plaintiff's affidavit that his attorneys came to the Detention Center and asked to speak with Captain Marshall or Defendant Schwartz about getting Plaintiff transferred. This objection need not be considered, however, as the Magistrate Judge did not base the decision on the lack of these affidavits or deposition testimony. The Magistrate Judge properly considered the allegations in Plaintiff's verified amended complaint. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. However, a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.").

7

alleged deprivation of his civil rights); *Freeman v. S.C. Dep't of Corr.*, No. 0:06-1171-DCN-BM, 2007 WL 1239504, *7 (D.S.C. Mar. 30, 2007); *McGhee v. Moyer*, 60 F.R.D. 578, 586 (W.D. Va. 1973) ("Otherwise stated, the doctrine of *respond[ea]t superior* has no application in a § 1983 action insofar as liability is concerned.").

Plaintiff did not mention Cribb by name anywhere in the "Statement of Claim" section of his verified amended complaint. As the Magistrate Judge noted, Plaintiff stated in his affidavit filed April 6, 2007 that Cribb knew Lewis was aggressive towards inmates and thus failed to protect him despite being aware of the threat to Plaintiff's safety. Specifically, this affidavit states (verbatim),

> 24. Defendants Lane Cribb and Michael Schwartz knew that Officer Lewis was Aggressive toward inmates.
> 25. Several Inmates filed Grievances against Officer Lewis before and after the fact of the incident.
> 26. Defendants Lane Cribb and Michael Schwartz failed to apply policy(s), and training to their officer's about excessive force.
> . . .
> 28. Defendants Michael Schwartz and Lane Cribb was aware of my safety and failed to protect me. And knew that their officer's was mistreating and violating our rights.

(Pl.'s Aff. ¶¶ 24-28.) The Magistrate Judge stated that although the affidavit indicates Cribb was aware Lewis was a threat to the inmates' safety, "these are merely conclusory statements[,] . . . and the Court is not required to accept such claims without any evidentiary support." (R&R at 8.) The Magistrate Judge further stated, "Indeed, it is readily apparent from a plain reading of the allegations of Plaintiff's Complaint as well as the other filings in this case that the only reason Cribb has been named as a party Defendant is because he is the Sheriff of Georgetown County." (R&R at 8.)

In *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), an inmate brought suit against several prison guards and three high ranking prison supervisory officials: the warden, the director of prisons, and the secretary of corrections. *Slakan*, 737 F.2d at 370. The plaintiff alleged the guards used

8

excessive force in violation of the Eighth Amendment for using high-pressure water hoses, tear gas, and billy clubs to subdue him when he was confined to a one-man cell. *Id*. The plaintiff alleged the supervisory officials "were deliberately indifferent to a known risk of harm, as evidenced by their failure to provide prison guards with adequate training and guidance." *Id*. He claimed these officials "had been deliberately indifferent to the use of excessive force by guards or had tacitly authorized such practices through their regulations and policies." *Id*. at 371. At trial, the jury found in favor of one of the prison guards but found in plaintiff's favor with respect to the remaining defendants. *Id*. at 370.

On appeal, the Fourth Circuit stated, "The unjustified striking or beating of a prisoner by police or correctional officials constitutes cruel and unusual punishment which is actionable under 42 U.S.C. § 1983." *Id*. at 372.[5] The court noted that "[t]he guards' conduct indisputably deprived Slakan of a right secured by the Constitution and the laws of the United States." *Id*. The court then examined "whether the responsibility for that deprivation can be traced to the actions of the guards' supervisors." *Id*. The Fourth Circuit stated,

> [Supervisory l]iability . . . is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.
> The plaintiff, of course, assumes a heavy burden in supervisory liability

---

[5] Although it appears Plaintiff was a pretrial detainee on January 4, 2005, Eighth Amendment principles are helpful in determining whether Plaintiff's Fourteenth Amendment rights were violated. *See Mitchell v. Aluisi*, 872 F.2d 577, 581 (4th Cir. 1989) ("Because [the plaintiff] was a pretrial detainee and not a convicted prisoner at the time of the alleged denial of medication, her claim is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which operates only after the state has secured a conviction. A violation of the Eighth Amendment standard set forth in *Estelle* [*v. Gamble*, 429 U.S. 97 (1976),] may be used, however, to determine a due process violation." (citations omitted)).

9

>   cases. He not only must demonstrate that the prisoners face a pervasive and
>   unreasonable risk of harm from some specified source, but he must show that the
>   supervisor's corrective inaction amounts to deliberate indifference or tacit
>   authorization of the offensive practices. Ordinarily, he cannot satisfy his burden of
>   proof by pointing to a single incident or isolated incidents, for a supervisor cannot
>   be expected to promulgate rules and procedures covering every conceivable
>   occurrence within the area of his responsibilities. Nor can he reasonably be expected
>   to guard against the deliberate criminal acts of his properly trained employees when
>   he has no basis upon which to anticipate the misconduct. A supervisor's continued
>   inaction in the face of documented widespread abuses, however, provides an
>   independent basis for finding he either was deliberately indifferent or acquiesced in
>   the constitutionally offensive conduct of his subordinates.

*Id.* at 373 (citations omitted). Using those standards, the Fourth Circuit upheld the jury verdict on the basis of supervisory liability. With respect to the warden, the court noted he admitted at trial that he "knew of and condoned the use of high-pressure water hoses against inmates housed in one-man cells on at least seven occasions in the twelve months preceding the attack upon Slakan." *Id.* The court found him liable because "the prevalence of the hosing practice was well-known" to the warden, "yet he failed to offer adequate guidance to his subordinates concerning the appropriate uses of such techniques when dealing with inmates securely confined." *Id.* at 374.

The court likewise upheld the liability of the director of prisons because he "became aware well before the Slakan incident that hoses and tear gas were routinely being used against inmates locked in their individual cells." *Id.* "His own testimony also established that he had never issued orders placing restrictions on the use of hoses against inmates, despite his actual knowledge about the widespread reliance on the practice." *Id.* With respect to the secretary of corrections, the plaintiff's case "focused on [the secretary's] failure to exercise his statutory powers in a manner calculated to end the indiscriminate use of high-pressure water hoses against inmates securely housed in one-man cells." *Id.* at 375. The court noted that although the regulations provided that physical force would be used only when necessary, the regulations did "not differentiate . . . between

10

the application of force against a roaming inmate and one locked in his one-man cell," nor do they even mention the use of high-pressure water hoses against inmates. *Id.* The evidence revealed the secretary "indisputably knew that water hosing was used as a routine control measure in North Carolina prisons." *Id.* The court thus upheld the jury's verdict on the basis of supervisory liability.

In the case *sub judice*, although Plaintiff asserts Cribb was aware Lewis was aggressive towards inmates and was aware of the threat to Plaintiff's safety and failed to protect Plaintiff, as the Magistrate Judge noted, these statements are conclusory. Magistrate Judge Marchant noted in a footnote that despite Plaintiff's allegation that several inmates had filed grievances against Lewis, Plaintiff does not provide copies of such grievances. Furthermore, Plaintiff's Objections seem to indicate Cribb *knew or should have known* of the danger. (*See, e.g.*, Plaintiff's Objections at 6-7 ("Cribb knew or had cause to know that the Plaintiff was transferred from Williamsburg County Detention Center to Georgetown Detention Center for 'safekeeping,' and that the plaintiff was su[bject] to a substantial risk of serious harm. Cribb also knew or had reason to know that Defendant Lewis had a history of violence. . . .").) The court is not required to accept Plaintiff's conclusory statements that Cribb knew Plaintiff was in danger. *Cf. Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (noting that in assessing a motion to dismiss, the court need not accept as true "unwarranted factual inferences"); *McKinnon v. Fed. Bureau of Prisons*, No. CA 003-3516-24, 2005 WL 4751202, *6 (D.S.C. Feb. 28, 2005). This is especially true given that Plaintiff has not indicated the statement in his affidavit is based on personal knowledge. Pursuant to Rule 56(e) of the Federal Rules of Civil

11

Procedure, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Plaintiff does not assert he had any contact with Defendant Cribb, and nothing in the record indicates how Plaintiff would have personal knowledge concerning what Defendant Cribb knew. *See Antonio v. Barnes*, 464 F.2d 584, 585 (4th Cir. 1972) (reversing district court's grant of summary judgment in favor of defendants when the affidavits stated the affiant was competent to make the affidavit but "there [was] no showing whatever that the statements therein were made on personal knowledge as required by the Rule."); *see also Guseh v. N.C. Cent. Univ.*, 423 F. Supp. 2d 550, 555 (M.D.N.C. 2005) ("As Rule 56(e) makes clear, an affidavit submitted on summary judgment must present evidence in substantially the same form as if the affiant were testifying in court. Thus, in the absence of an affirmative showing of personal knowledge of specific facts, a court cannot consider such an affidavit in making its summary judgment determination." (internal quotation marks and citations omitted).); *cf. Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 315-16 (D. Md. 1983) ("[E]vidence that the affiant has knowledge of the facts contained in his affidavit need not be contained in the traditional litany of same, but can be demonstrated from the face of the affidavit itself."). As Plaintiff has not demonstrated he has the requisite personal knowledge, the court is not required to accept his conclusory assertion that Cribb knew of Plaintiff's allegedly dangerous situation. The court therefore agrees with the Magistrate Judge's recommendation that Defendant Cribb's Motion for Summary Judgment should be granted.

**B.      Defendant Schwartz's Objections**

Schwartz first seems to complain about the fact that the Magistrate Judge considered affidavits submitted by Plaintiff and filed on April 6, 2007. Schwartz complains that these affidavits "allege facts as to Defendant Michael Schwartz previously not alleged, and, due to the date on which they were filed, Defendants Cribb and Schwartz did not have adequate time to respond to such new allegations through additional affidavit testimony before the Court rendered its Report and Recommendation of April 20, 2007." (Schwartz Objections at 2.) He "specifically objects to Part II of the Court's Report and Recommendation wherein the Court relies on the Plaintiff's affidavit testimony of April 6, 2007, and offers the attached Supplemental Affidavits of Defendants Cribb (Exhibit A) and Schartz (Exhibit B) in support thereof." (Schwartz Objections at 2.)

Schwartz also argues that Plaintiff's Complaint "makes no mention of any personal involvement or knowledge of Mr. Schwartz. Plaintiff fails to mention Michael Schwartz's name in his complaint and asserts conclusory allegations as to 'jail administration only." (Schwartz Objections at 2.) According to Schwartz, Plaintiff made the allegations concerning Schwartz's "personal involvement with the Plaintiff and prior knowledge of some impending danger to the Plaintiff only after being sufficiently educated as to the applicable supervisory liability standard through Defendants' Memorandum in Support of their Motion for Summary Judgment." (Schwartz Objections at 2-3.) Schwartz states that "Plaintiff's affidavit testimony related to conversations with Michael Schwartz is refuted by Defendant Schwartz in his Supplemental Affidavit attached as Exhibit B." (Schwartz Objections at 3.)

Schwartz's objections are without merit. While Schwartz may be correct that Plaintiff did not mention Schwartz by name in his Complaint, Plaintiff does mention Schwartz by name in his

13

verified *amended* complaint. Specifically, the amended complaint states (verbatim),

> The Plaintiff asserts that the defendant Michael Schwartz, Georgetown Detention Center Administrator, is liable and sued in his Individual and Official capacity for the damage that the Plaintiff had suffered at the hands of his Officer's, by and through their excessive force demonstrated upon the Plaintiff to inflict pain and injury, irreparable mental and emotional damages, fear of being in crowds of People, due to the group brutal beating that I experience at the Georgetown Detention Center, that the defendant is the administrator of and over, and the authority to train his Employees/Officers to set better standards before the public eye. And for the damages and injuries, cruel and unusual punishment, the deliberate indifference, the excessive force, the failure to keep me safe while being housed in the County/State Facility in which he is administrator of, that has subjected to the onslaught of brutality that I suffered at the hands of the Professional misconduct of Officers employed at Georgetown Detention, which has violated my 8th and 14th Constitutional Amendment Rights, while awaiting to be tried, and while being a pre-trial detainee, at Georgetown Detention Center. . . who at the policies, rules, and regulations, of the Georgetown Detention Center, was able to subject me to such cruel and unusual punishment, while being under the authority and supervision of its administrator, whom fail to train, discipline, and demand strict compliance with the rules, policies, and regulations, set forth to operate such a facility, that has intentionally, violated my 8th and 14th Constitutional Amendment Right. . . .

(Am. Compl. at 12.) Although some of Plaintiff's allegations may be difficult to understand, contrary to Schwartz's assertion, Plaintiff does mention Defendant Schwartz by name, and Plaintiff alleges Schwartz failed to train and discipline his officers. Furthermore, Plaintiff's affidavit filed April 6, 2007 indicates that Plaintiff spoke with Schwartz several times about the danger Plaintiff was in but that Schwartz failed to take action. This evidence is sufficient to withstand Schwartz's Motion for Summary Judgment, given that Plaintiff filed a verified amended complaint and that *pro se* litigants' complaints are read more liberally than those drafted by attorneys. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

Although Schwartz objects to the Magistrate Judge's consideration of the affidavits filed on April 6, Rule 56(c) states summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to an order signed by Magistrate Judge Marchant on March 13, 2007, Plaintiff had until April 6, 2007 "to file any additional material in opposition to the Defendants' motion [for summary judgment], including declarations from prisoners." (*See* Order at 2.) Thus, the affidavits filed on April 6 were timely filed, and, in any event, "[a] district court has discretion to accept an untimely affidavit." *Lovelace v. Lee*, 472 F.3d 174, 204 (4th Cir. 2006); *see also Christian Methodist Episcopal Church v. Montgomery*, No. 4:04-CV-22322-RBH, 2007 WL 172496, *5 (D.S.C. Jan. 18, 2007). Schwartz's argument that the evidence filed on April 6 should not be considered is thus without merit. Furthermore, to the extent Schwartz argues he is entitled to summary judgment because he has now submitted affidavits that contradict the facts contained in the affidavits submitted by Plaintiff on April 6, that argument is without merit. The purpose of a motion for summary judgment is to determine if there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242. While Schwartz may disagree with the factual allegations contained in the affidavits submitted on April 6, such disagreements cannot be resolved on a motion for summary judgment. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) ("If, after reviewing the record as a whole, however, . . . a reasonable jury could return a verdict for [the plaintiff], then a genuine factual dispute exists and summary judgment is improper." (citing *Anderson*, 477 U.S. at 248)).

Schwartz's last argument is that "Plaintiff's affidavit testimony amounts, at best, to allegations of negligence on the part of Defendant Schwartz and fails to allege specific facts indicating knowledge of conduct that posed a pervasive and unreasonable risk of constitutional injury." (Schwartz Objections at 4.) The court disagrees–Plaintiff's evidence supports his allegation

that Defendant Schwartz knew the danger Plaintiff was in because Plaintiff specifically spoke with Schwartz about this danger several times but that Schwartz failed to take action to protect Plaintiff. As the Magistrate Judge noted, since Plaintiff's allegations, if true, may amount to a violation of Plaintiff's constitutional rights, the court should deny Schwartz's Motion for Summary Judgment. *See Slakan*, 737 F.2d 368 (affirming jury verdicts against the warden, the director of prisons, and the secretary of corrections when they were deliberately indifferent or tacitly approved of the use of high-pressure water hoses against inmates locked in one-man cells); *Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004) (noting that, in order for supervisory liability to attach in a § 1983 action, "the supervisory power must have had notice of the constitutional or statutory violation, and thereafter must have consciously chosen a particular course of action in response"); *Adams v. Drew*, 906 F. Supp. 1050, 1060 (E.D. Va. 1995) ("A prison official may not be held liable unless he knows of and disregards an excessive risk to inmate health or safety. Actual knowledge or awareness on the part of the alleged inflictor is essential." (internal quotation marks and citations omitted)); *cf. Blankenship v. Virginia*, 432 F. Supp. 2d 607 (E.D. Va. 2006) (granting summary judgment to (1) former prison superintendents when they had no knowledge the prisoner feared for his safety or that he requested to be moved to another location and (2) to a former prison counselor who had direct knowledge of the prisoner's fear but who notified his supervisor of the prisoner's fear and scheduled the prisoner to be transferred to a more secure pod; the court stated the counselor "responded reasonably" to ensure the prisoner's health and "did not, as a matter of law and fact, expose [the prisoner] to a substantial risk of serious damage to his future health"). The court thus agrees with the Magistrate Judge's recommendation that Defendant Schwartz's Motion for Summary Judgment should be denied.

## **CONCLUSION**

It is therefore **ORDERED**, for the foregoing reasons, that Defendant Cribb's Motion for Summary Judgment is **GRANTED**.  It is further **ORDERED** that Defendant Schwartz's Motion for Summary Judgment is **DENIED**.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**July 24, 2007**